IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JOHN DOE ET AL                                                          PLAINTIFFS

Vs.                               CASE NO. 08-6076

LAVON FLAHERTY ET AL                                                    DEFENDANTS


**PLAINTIFFS' BRIEF IN SUPPORT OF RESPONSE
TO MOTION FOR SUMMARY JUDGMENT**

I.      INTRODUCTION

In 2006, the Delight School District hired Chad D. Smith to coach the high school girls' basketball teams for the school district. Beginning on or around October 1, 2006, Chad Smith engaged in sexual contact, including oral sex with Plaintiff Jane Doe. At the time, Jane Doe was enrolled in the ninth grade with Delight Schools, and was under the age of sixteen (16) years old.

According to customs and policies permitted at Delight High School by all Defendants, Smith was permitted to call Ms. Doe from her classes at all hours of the school day for private meetings with him, to text message Ms. Doe and others in order to harass and seduce them, and to receive 'privacy' in his office for the purposes of sexual liaisons without fear of disturbance. These acts were the subject of reports of suspected impropriety related to both Jane Doe and other female students, which were not acted on by any Defendant.

Over the course of the school year, Principal Tanya Wilcher and Superintendent Curtis Turner, Jr., received multiple complaints about Coach Smith's conduct around young female students. Beginning as early as the summer before the 2006-2007 school year began, only weeks after he was hired on to the Delight School District, Mr. Turner received a complaint from a

1

parent that Coach Smith sent a text message asking "are you drunk yet?" to two female students headed to a concert. Ex. 1, Wilcher Deposition Excerpts, 59:20-61:19; Ex. 2 Turner Deposition Excerpts, 31:8-9. Despite the harassing and inappropriate nature of the text, neither Turner nor Wilcher did anything more than verbally reprimand Coach Smith. Id. Nothing was put in his personnel file about the incident. Id.

Coach Smith's behavior around female students continued to escalate. In October 2006, Coach Smith made sexually suggestive comments about the parent of one of his students during an overnight basketball trip in front of several people. Ex. 1, Wilcher Dep. 74-75:4-13. When Principal Wilcher "investigated" the incident, she simply asked Coach Smith if the allegations were true, and accepted his explanation that a male student, L.S. (who lived with him at the time and relied upon the Coach for his continued ability to attend school in that area), had actually made the statement. Again, even though Coach Smith's comments were public, harassing and sexually suggestive, Ms. Wilcher determined that a verbal reprimand with no formal write-up or investigation was sufficient.[1]

---

[1] Interestingly, when a school board member, Gary Wofford, collected letters from concerned parents about Coach Smith in January 2007 (three months before the school district took any action regarding Coach Smith and he was arrested for sexual abuse), this incident was again related by the same parent, including additional detail. Specifically, the parent's letter stated that:

> "…However how is it appropriate that Coach Smith is able to get away with texting messages such as "You look so good today." Or "Hey E—tell your mom I love her." Or "Hey tell T.S. I will stay in the hotel room with her in Buffalo Island."…If there are young girls at his house he can say they are only there to see L.S. **When will it stop? Perhaps when it is too late, and things have gone too far**."

Excerpt from Wofford Letters, Ex. 7. (Emphasis supplied).

Ms. Wilcher, on behalf of the school district, accepted that explanation with no real investigation. Yet, according to the letter received from a parent in January 2007, Coach Smith was also texting the exact same statements (among others) to his female players during this time period. Even when Ms. Wilcher "reinvestigated"

2

Perhaps most striking in relation to this case were the events that occurred later in October 2006. Mr. Turner's secretary, Christie Hill, voiced concerns that she thought something was "going on" between Jane Doe and Coach Smith, and asked his advice about informing her parents. Christie Hill was so adamant that this was important information that she did not simply call Cindy and John Hill about it – she went to their home to speak to them in person. Ex. 3, Cindy Hill Affidavit ("C. Hill Aff."). After speaking to Christie, Cindy Hill immediately contacted Ms. Wilcher at the school to discuss the situation. At that time, Ms. Wilcher told Ms. Hill that there was nothing to worry about. Ex. 3, C. Hill Aff.

Even so, Christie Hill, Ms. Turner, and Jane Doe's parents spoke later that same evening in the school parking lot about the situation. According to Ms. Wilcher, she intended to "investigate" the allegation. Ex. 1, Wilcher Dep., 91:15-18. Despite this intention, Ms. Wilcher admits that after that confrontation, "I really never heard \_\_\_\_\_'s [*Jane Doe's*] name really again, I mean, really and truly until March." Ex. 1, Wilcher Dep. 91:6-7. Ms. Wilcher also does not report any annotation in Coach Smith's personnel file; Ex. 3, Cindy Hill Affidavit ("C. Hill Aff."); Ex. 4, John Hill Affidavit ("J. Hill Aff.").

After the confrontation specifically related to Jane Doe, complaints continued to come into the school regarding Coach Smith. Around December 18, 2006, Kim Osburne, a high school teacher, brought a student's cell phone to the attention of Mr. Turner (who was acting as principal since Ms. Wilcher was on maternity leave). The cell phone contained a text message purportedly from Coach Smith to a student reading "OMG you look good today." Coach Smith

---

the incident along with the others reported in the Wofford Letters in January, she states in her affidavit that she only reprimanded Coach Smith for unsportsmanlike conduct when he told his basketball players not to shake hands at the end of a basketball game.

denied sending the message, and yet again blamed the high school boy who lived with him, L.S., for sending it. Mr. Turner again accepted this explanation and no further investigation was conducted. Mr. Turner did not write up any report in Coach Smith's personnel file regarding the incident. Ex. 2, Turner Dep., 45-47:2.

Throughout all of this, Mr. Smith continued to engage in oral sexual activities with Plaintiff Jane Doe throughout the 2006-2007 school year, until approximately March 2007. On March 14, 2007, when Ms. Doe's parents were ultimately notified of the acts by Mr. Smith, they complained to Pike County authorities, who arrested and charged Chad Smith with sexual assault in the first degree, a Class A felony.

Defendants' policies, procedures, actions and inactions aided and abetted girls' basketball coach Chad Smith, and jointly, severally and individually caused the Plaintiffs' damages. For the majority of the 2006-2007 school year, these acts unreasonably subjected Plaintiff Jane Doe to substantial additional harassment, proximately causing or aggravating her original injuries and damages, while Defendants failed to remove Coach Smith from his position until newspaper and television coverage of the allegations and subsequent investigation by authorities made the removal of Mr. Smith unavoidable.

Pike County authorities found Plaintiffs' allegations to be substantiated. Subsequently, Mr. Smith was prosecuted for first degree sexual assault. He eventually pled guilty to the charge on or about March 14, 2008, and was sentenced to ten (10) years in prison with six (6) years suspended, and will be banned from working as a teacher in the state of Arkansas. Smith will also have to register as a sex offender upon his release from prison.

Coach Chad Smith had previously engaged in sexual misconduct with minors through the abuse of his position of authority as a schoolteacher and coach. Ex. 8, Statement of A. B. These

4

instances of sexual misconduct, as well as instances of sexual misconduct at other Public Schools, were ignored by the Superintendent and Principal, and the School Board as a result of policies, practices, customs and procedures implemented by defendants.

Rather than corrective, disciplinary or remedial action being taken, the allegations made known to Defendants were actively ignored and covered-up, including encouraging a pattern of conduct engaged in by Coach Smith as he sought 'dates' with underage students. Additionally, the Defendants were deliberately indifferent to the rights of the Plaintiff and other citizens in their existing customs and policies, amounting to a failure to adequately screen for hiring, investigate, train, supervise, discipline or terminate Coach Smith; and in their failure to take preventative or remedial measures to prevent acts of sexual misconduct and violence by employees under their supervision, having knowledge of such propensities by employees of the Delight Public Schools.

The Defendants were also deliberately indifferent in failing to establish and enforce new and adequate policies and customs regarding the prevention, investigation, and discipline of sexual and other unconstitutional misconduct of Delight Public schoolteachers and coaches, and instead encouraged such behavior by customs and policies amounting to acquiescence and indifference to violations of citizens' constitutional rights.[2] These failures proximately placed Coach Smith in a position, by virtue of the status and power conferred upon him as a junior high and high school girls' basketball coach, to violate the Constitutional rights of the Plaintiff, Jane Doe, and Plaintiff's Constitutional rights would not have been violated by Coach Smith but for

---

[2] Indeed, it was clear from depositions of both Tanya Wilcher, then Principal of Delight High School, and Curtis Turner, Jr., then Superintendent of the Delight School District, that they do not even understand what the term "mandatory reporter" requires of them as educators. Ex. 1, Wilcher Dep., 188-189; Ex. 2, Turner Dep., 84-87.

the deliberate and intentional indifference by the Defendants, which was a proximate cause of the injuries to the Plaintiff.

## II.     SUMMARY JUDGMENT

Plaintiffs agree that the law generally concerning summary judgment has not changed in any substantial respect since the cases cited by Defendants.  However, Plaintiffs deny the Defendants are entitled to summary judgment in their favor.  In considering the Motion, the Court is not to *resolve* disputed issues of fact, but rather to *assess* whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 255-56 (1986).  The moving party bears the burden of establishing that no genuine dispute as to material fact exists.  *Celotex v. Catrett*, 477 U.S. 317 (1986).

Summary judgment should be cautiously invoked so that no person will be improperly deprived of a trial on the disputed issues.  *Mitchell v. Globe Internat'l Pub., Inc.*, 773 F.Supp. 1235 (W.D. Ark. 1991).  The Court is required to view the evidence in a light most favorable to the non-moving party, and give the non-moving party the benefit of all reasonable factual inferences.  *Johnson v. Group Health Plan, Inc.*, 994 F.2d 543, 545 (8th Cir. 1993); *AgriStor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987).

Despite Defendants' claims to the contrary, this case is not appropriate to be decided by summary judgment.  As is clear from Defendants' Statement of "Undisputed" Facts, Plaintiffs' Response to those Facts, deposition and affidavit testimony, and as described in more detail below, there are a *number* of **material facts** in dispute in this case that cannot be resolved at this time, and must be submitted to the jury for a final determination.

### III.  ARGUMENT

A. Title IX Violations

**Individuals**

Defendants' application of the law regarding individual liability under Title IX is misplaced. Plaintiffs do not disagree that Title IX applies only to recipients of federal funding, which in this case would be the Delight Public School District. Defendants' Statement of Uncontested Facts, ¶ 1. However, Plaintiffs have not made *any* claim against *any* individual defendant in this case under Title IX.

Paragraph 25 in "Count II – Violations of Title IX" of Plaintiffs' Complaint states that, "The Defendant Delight Public School District receives federal funding." Complaint, ¶ 25. No other Defendant is mentioned in Count II, which is the only count in Plaintiffs' Complaint that deals with Title IX. Additionally, Paragraph 30 of Count II concludes, "Coach Smith's sexual harassment of Jane Doe deprived her of the benefits of and subjected her to discrimination *under the educational program of the Delight Public School District in violation of 20 U.S.C. § 1681*." Complaint, ¶ 30. (Emphasis supplied). None of the intervening paragraphs in Count II deal with any other defendant other than the Delight Public School District, which is admittedly a recipient of federal funds, and thus the proper defendant.

Plaintiffs have correctly pled their claim under Title IX as to the school district exclusively, and thus, Defendants' allegation in their Motion that Plaintiffs have somehow incorrectly joined the individual defendants into their Title IX claim is simply misguided and false.

**Delight Public School District**

Next, Defendants argue that Plaintiffs' Title IX claim against the *school district* cannot survive summary judgment because "[P]laintiff failed to provide actual notice of her harassment by Chad Smith to any school official." Defendants' Motion for Summary Judgment, 14. Defendants' assertion that they had no notice of the sexual abuse and harassment Plaintiff Jane Doe suffered at the hands of Chad Smith in itself reflects a material fact in dispute.

Title IX prohibits gender discrimination in education programs receiving federal financial assistance, including athletic programs. Though Congress was silent on the question of private remedies, the Supreme Court has implied a private right of action to enforce Title IX, *Cannon v. Univ. of Chicago,* 441 U.S. 677, 717 (1979), and has authorized the award of money damages. *Franklin v. Gwinnett County Pub. Sch.,* 503 U.S. 60, 76. In *Gebser v. Lago Vista Ind. School Dist.*, the Supreme Court noted that the express remedy in Title IX operates on an assumption of prior notice of alleged discrimination to the funding recipient and an opportunity to rectify any violation voluntarily. 524 U.S. 274, 288 (1998). The Court therefore held that compensatory damages may not be recovered in cases of teacher-student sexual harassment unless a school official with authority to address the discrimination had actual notice of and was deliberately indifferent to the discrimination. Id. at 290.

The question of which school officials have the requisite authority to address discrimination under Title IX has been more difficult for courts to answer. Typically, courts have recognized that the administration of a school and the roles that various persons fill therein vary from district to district. As such, the Eighth Circuit has specifically declined to create a "bright line" rule as to which job titles and positions automatically mark an individual as having sufficient authority or control for the purposes of Title IX liability. *Plamp v. Mitchell School*

*Dist. No. 17-2*, -- F.3d --, 2009 WL 1288612 (8th Cir. 2009); see also *Murrell v. Sch. Dist. No. 1, Denver, Colo.,* 186 F.3d 1238, 1247 (10th Cir.1999) ("Because officials' roles vary among school districts, deciding who exercises substantial control for the purposes of Title IX liability is necessarily a fact-based inquiry").

It is apparent from Supreme Court precedent, however, that school principals are considered "appropriate persons" in the Title IX analysis. *See, e.g., Davis,* 526 U.S. 629, 653 (discussing the principal's actual knowledge of harassment); *Gebser,* 524 U.S. at 291 (assuming without discussion that a high-school principal was an appropriate person under the statute); see also *Murrell,* 186 F.3d at 1247 ("We find little room for doubt that the highest-ranking administrator at [the high school] exercised substantial control of [the teacher] and the [high school] environment during school hours, and so her knowledge may be charged to the School District"). Since an "appropriate person" for Title IX inquiry is "at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." *Gebser*, 524 U.S. at 290, there can be no question that a school superintendent also fits this definition.

Defendants argue that in order to satisfy the "actual notice" requirements under *Gebser* and other Title IX cases, Plaintiff Jane Doe must have directly spoken to a school official (an "appropriate person") at some point prior to March 14, 2007 and told them that she was being sexually harassed, abused and assaulted by Chad Smith. This personification of "actual notice" is not in line with recent federal interpretation of the phrase.

Defendants seek to impute more specificity into the term "actual notice" than is clearly intended by the courts. In *Gebser*, the Supreme Court simply used the term "actual notice" to differentiate between the proposed standards of *respondeat superior* and constructive notice. *Gebser*, 524 U.S. at 275. There, the Court explained that:

> "Title IX's express means of enforcement requires actual notice to officials of the funding recipient and an opportunity for voluntary compliance before administrative enforcement proceedings can commence. The presumable purpose is to avoid diverting education funding from beneficial uses where a recipient who is unaware of discrimination in its programs is willing to institute prompt corrective measures. Allowing recovery of damages based on principles of *respondeat superior* or constructive notice in cases of teacher-student sexual harassment would be at odds with that basic objective, as liability would attach *276 even though the district had no actual knowledge of the teacher's conduct and no opportunity to take action to end the harassment."

Id. at 275, and 288.

Thus, it is clear from the Court's interpretation that the purpose of requiring "actual notice" is not to require such specificity in pleadings so as to require a school official to literally eye-witness a sexual assault or sexually harassing behavior, but rather, "actual notice" implies a situation in which the school officials are on notice that its employees (or its programs) are in some way participating in discriminatory behaviors.

The Eighth Circuit seems to have agreed with this interpretation of "actual notice." In *P.H. v. School Dist. of Kansas City, Missouri*, the Eighth Circuit discussed the issue defining "actual notice." 265 F.3d 653 (8th Cir. 2001). There, the plaintiff argued that the district had actual notice of sexual abuse against a teacher where an allegation of abuse had been made several years prior and the district failed to investigate. Id. at 662. The court ultimately held that the plaintiff could not prove actual notice, but not because the district had no actual notice of the *plaintiff's* specific abuse, but rather because the plaintiff could not prove the district had not fully investigated the previous allegation, and also because the previous allegation was over twenty years in time removed from the facts in the case at bar. Id. Thus, by implication, the court indicated that *had* plaintiff been able to show the school's failure to investigate prior allegations of sexual abuse more recently, he may have been able to satisfy the actual notice and deliberate indifference requirements under Title IX.

10

Here, Defendants not only had actual notice of previous sexually harassing behavior by Coach Chad Smith *during the same school year*, but they also had actual notice of sexually harassing behavior of Coach Smith specifically aimed at Jane Doe. As explained in the Background section of this brief, *supra*, as well as in Plaintiffs' Response to Defendant's Statement of Undisputed Facts, Coach Smith began harassing female students almost immediately after being hired on at the Delight Public School District. Students and parents alike were complaining about his inappropriate text messaging. Ex. 1, Wilcher Deposition Excerpts, 59:20-61:19; Ex. 2 Turner Deposition Excerpts, 31:8-9. Parents were complaining about inappropriate sexually suggestive comments made to male and female basketball players. Ex. 1, Wilcher Dep., 74-75:4-13; see also Ex. 7, Wofford Letters. Female students were actually quitting the basketball team in their senior season as a direct result of Coach Smith's sexually-based and harassing remarks. Ex. 7, Wofford Letters. Yet even though each of this incidents was reported to either Ms. Wilcher, the high school principal or Mr. Turner, the superintendent, neither bothered to even write Chad Smith up for his behavior.

Additionally, the school district had "actual notice" as to Chad Smith's sexual harassment of Jane Doe specifically. In late October of 2006, five months before Mr. Smith's March 2007 arrest, Jane Doe's parents confronted principal Tanya Wilcher in the parking lot of the high school during a school board meeting about allegations brought to their attention *by the superintendent's secretary* that something was "going on" between their daughter and Chad Smith. Ex. 3 C. Hill Aff., Ex. 4 J. Hill Aff. Cindy Hill called Ms. Wilcher the day she found out about the allegations, and felt strongly enough about it that she approached her again in person that evening in the school parking lot. Defendants tried to personify this exchange as one based upon Jane Doe's simply skipping class. Even so, it is unlikely and unreasonable to believe

that Jane Doe's parents and the superintendent's secretary, Christie Hill, would be so concerned about her skipping class from time to time so as to merit such a strong response from all parties in response. Ms. Wilcher admitted in her deposition that she did **nothing** after that meeting in the parking lot, and didn't think much about Jane Doe again until the following March. Ex. 1, Wilcher Dep., 92:6-7.

Defendant seems to argue that because Jane Doe herself did not notify a school official directly of the sexual harassment and abuse, that somehow the notice requirement under Title IX has not been met. As is explained above, Jane Doe's parents, also named Plaintiffs in this action, provided actual notice to appropriate persons with the school district five months before Chad Smith's arrest. Plaintiff Jane Doe was fourteen years old at the time the abuse and harassment took place, and was being manipulated by her abuser into not telling anyone what was happening. When her parents tried to alert trusted school officials on her behalf, they were brushed aside and told nothing was going on, and worse, led to believe that Christie Hill, a cousin, was lying to the detriment of their daughter. No one bothered to investigate these allegations until March 14, 2007 when it was already "too late." Ex. 7, Wofford Letters.

The second prong of the Title IX inquiry requires that an appropriate official with actual notice responds with deliberate indifference to the Title IX violation. *Gebser*, 524 U.S. at 290-291. Deliberate indifference is defined as the situation in which, "an official decision by the recipient not to remedy the violation." Id. at 291. The district's deliberate indifference to Jane Doe's situation is glaringly obvious: Rather than take action against a coach that **both** the superintendent and principal **still** consider "one of the best coaches…[Mr. Turner] know[s] of" school officials followed a *custom* and *policy* of purposeful inaction with regard to Chad Smith's

12

behavior with Jane Doe and other female students in the Delight School District.   Ex. 2, Turner Dep., 115:1-4

> B.  § 1983 Violations

1. The District's Liability

A plaintiff may establish municipal liability under § 1983 "by proving that his or her constitutional rights were violated by an 'action pursuant to official municipal policy'...." *Ware v. Jackson Co., Mo.,* 150 F.3d 873, 880 (8th Cir. 1998) (quoting *Monell v. Department of Soc. Serv.,* 436 U.S. 658, 691 (1978)). An official policy arises when an official, who has the final authority to establish governmental policy in a particular area, makes a deliberate choice to follow a particular course of action from among a variety of alternatives. *Jane Doe "A" v. Special School Dist. of St. Louis County,* 901 F.2d 642, 645 (8th Cir.1990). Defendants assert that Plaintiffs have failed to allege an official policy established by an official with final policymaking authority that caused the constitutional violations of which Plaintiffs complain.

Whether an official has final policymaking authority is a question of state law. *Jett v. Dallas Independent School Dist.,* 491 U.S. 701, 737 (1989). In Arkansas, the law is clear that the school board is a school district's authorized policymaker. *See* Ark.Code Ann. § 6-13-620; *Springdale Educ. Ass'n v. Springdale School Dist.,* 133 F.3d 649, 651 (8th Cir.1998). Defendants point out that the District's express policy prohibits sexual harassment.  While Plaintiffs do not deny that Defendants had a written policy in place, Plaintiffs *do* dispute that Defendants actually followed that policy.

A genuine issue of material fact exists as to whether the District had a policy or custom of failing to adequately receive, investigate, and act upon prior complaints of Coach Smith's

misconduct, and whether the District was properly adhering to its own sexual harassment policy to protect students and staff. See e.g. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694 (1978).

For the District to be held liable on the basis of *custom*, there must have been a pattern of "persistent and widespread" unconstitutional practices which became so "permanent and well settled" as to have the effect and force of law. See *Monell,* 436 U.S. at 691. The Eighth Circuit has held that to establish the existence of a governmental custom or failure to receive, investigate, or act on complaints of violations of constitutional rights, a plaintiff must prove:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

See *Jane Doe A*, 901 F.2d at 645-646; *Harris v. City of Pagedale,* 821 F.2d 499, 504-07 (8th Cir.), *cert. denied,* 484 U.S. 986, 108 S.Ct. 504, 98 L.Ed.2d 502 (1987).

In *City of Pagedale*, the Eighth Circuit found that the Plaintiff showed a widespread and pervasive custom of "failing to receive, investigate and act upon complaints of physical and sexual misconduct by police officers," where city officials failed to properly investigate or act on citizen complaints of police misconduct. 821 F.2d at 507. Likewise, school officials here failed repeatedly to act on numerous complaints about Chad Smith throughout the course of the school year.

Each time Ms. Wilcher or Mr. Turner received a complaint, they would "investigate" by way of asking Coach Smith if the allegation was true, then concluded that "investigation" by accepting whatever excuse he (or L.S., who relied upon him for a home) gave them. Rather

than follow-up with any sort of meaningful investigation, and in spite of repeated and continued notice of Chad Smith's conduct with underage females, the District pursued a specific practice of *inaction*. As a result, Jane Doe suffered tremendously.

While Defendants may argue their apparently casual inquiries to Mr. Smith constituted an investigation, such action does not seem to rise to the level of a "proper investigation" as required under Eighth Circuit analysis of § 1983 liability on the basis of custom. In short, Defendants cannot escape liability under § 1983 by hiding behind *policy* while actually *practicing* unconstitutional **custom**.

1. Individual 1983 Liability

Plaintiffs concede that Defendants Flaherty and Cole came to the district after the events in the 2006-2007 school year that form the basis of the complaint. While Plaintiff agrees that neither Flaherty nor Cole is liable in their individual capacities, Plaintiff still holds that they are both liable in their official capacities, as successors to the roles of principal of Delight High School and superintendent of the Delight School District. In that respect, their liability on behalf of the school district is clear.

Defendants claim that Tanya Wilcher and Curtis Turner, Jr. are not liable in their individual capacity because they are protected by qualified immunity. The first step in deciding whether Wilcher and Turner are entitled to claim qualified immunity from this lawsuit is to determine whether the Constitution, through the Fourteenth Amendment's substantive due process component, protects school-age children attending public schools from sexual abuse inflicted by a school employee. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker v. McCollan,* 443 U.S. 137, 146 (1979). To state a cause of action under § 1983 for violation of the

Due Process Clause, Plaintiffs "must show that they have asserted a recognized 'liberty or property' interest within the purview of the Fourteenth Amendment, and that they were intentionally or recklessly deprived of that interest, even temporarily, under color of state law." *Griffith v. Johnston,* 899 F.2d 1427, 1435 (5th Cir.1990). "The Supreme Court has expanded the definition of 'liberty' beyond the core textual meaning of that term to include [not only] the ... privileges [expressly] enumerated by the Bill of Rights, [but also] the 'fundamental rights implicit in the concept of ordered liberty' and 'deeply rooted in this Nation's history and tradition' under the Due Process Clause." Id*.; see also Bowers v. Hardwick,* 478 U.S. 186, 191 (1986); *Hewitt v. Helms,* 459 U.S. 460, 466 (1983); *Moore v. City of East Cleveland,* 431 U.S. 494, 503 (1977).

Jane Doe's substantive due process claim is grounded upon the premise that schoolchildren have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment and upon the premise that physical sexual abuse by a school employee violates that right. Defendants try to limit this inquiry solely to the "acts, customs and policies" of the district and its employees; however a number of circuits, including the Eighth Circuit, have recognized due process violations as a result of sexual assault or abuse. See *Jones v. Wellham,* 104 F.3d 620, 628 (4th Cir.1997) (In a case involving rape by a police officer after a traffic stop, the Fourth Circuit described the due process right which was violated as a "right ... not to be subjected by anyone acting under color of state law to the wanton infliction of physical harm"); *McWilliams v. Fairfax County Bd. of Supervisors,* 72 F.3d 1191, 1197 (4th Cir.), *cert. denied,* 519 U.S. 819 (1996) (Court described this due process right as "protection against unreasonable bodily intrusions by state actors" in discussing a claim based on abusive sexual conduct in a state facility); *Doe v. Taylor Ind. Sch. Dist.,* 15 F.3d 443, 450-52 (5th

16

Cir.1994) (In a 1994 case involving sexual abuse of school children by a teacher the Fifth Circuit held that there was a well-established "liberty interest in … bodily integrity"); *Sepulveda v. Ramirez,* 967 F.2d 1413, 1415-16 (9th Cir.1992) (The Ninth Circuit observed a "right to bodily privacy" where a parolee was observed while supplying a urine sample).

The Eighth Circuit has also applied due process analysis to violation by a state actor of an individual's bodily integrity. In *Haberthur v. City of Raymore, Missouri,* 119 F.3d 720, 723 (8th Cir.1997), the court recognized the due process right to be free of unwelcome "sexual fondling and touching or other egregious sexual contact" by a police officer acting under color of law and reversed a dismissal on the pleadings. Here, Coach Smith' sexual abuse and harassment of Jane Doe, as more fully explained above, is not contested by the Defendants. Thus, Jane Doe clearly was deprived of a liberty interest recognized under the substantive due process component of the Fourteenth Amendment Obviously, there is never any justification for sexually molesting a schoolchild, and thus, no state interest, analogous to the punitive and disciplinary objectives attendant to corporal punishment, which might support it.

Because Jane Doe's constitutional rights were violated, the second prong of the qualified immunity inquiry requires a showing that Jane Doe's right was clearly established. In order for a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Johnson-El v. Schoemehl,* 878 F.2d 1043, 1048 (8th Cir.1989). As previously explained, Jane Doe had a liberty interest in her bodily integrity and against sexual assault and harassment by her teacher. There can be no doubt that her right to be free from sexual assault and harassment at school is clearly established, and certainly clear enough that a reasonable official (i.e. Wilcher or Turner) would recognize that their course of inaction with regard to Chad Smith violated that right.

Additionally, both Wilcher and Turner should have been reasonably aware that their disregard of the school's written sexual harassment policy would also result in the violation of Jane Doe's constitutional rights.

Defendants argue that there is no showing of deliberate indifference as to Jane Doe's rights because "[Wilcher and Turner] did not harass her nor was it their policy to allow anyone else to harass her." Defendants Brief in Support of Summary Judgment, 19.  While Defendants were clearly attempting to make Plaintiffs' claim seem outlandish, the statement hits upon the point that Ms. Wilcher and Mr. Turner *did* allow someone else to harass Jane Doe – they allowed Chad Smith to harass her from almost the very beginning of the school year until mid-March. They failed repeatedly to follow up on complaints about Chad Smith and other girls.  They failed to follow up on Plaintiffs' direct complaint regarding Jane Doe and Chad Smith in October 2006. They provided Chad Smith with a situation in which he was afforded privacy in his office[3] with female students, and in fact, Curtis Turner testified that the Delight athletic department basically operated under their own rules.  Ex. 2, Turner Dep., 39-40.

Clearly, Wilcher and Turner's consistent, purposeful and willful disregard of Chad Smith's activities with other young women, and with Jane Doe in particular, constituted deliberate indifference to her constitutional right to be free from sexual abuse and harassment. There can be no question that their custom of inaction resulted in harm to Jane Doe and her family, and thus, they cannot use qualified immunity to avoid their individual liability in this case.

---

[3] Scott Kelton, Delight Athletic Director, stated in his deposition that he left Chad Smith alone in their shared office whenever he had to go teach a class, and that he would do so regardless of whether Chad was in the office with a group of students, or with just one student of the opposite sex.  Ex. 9, Kelton Dep., 94-95.

## III.  CONCLUSION

WHEREFORE, having fully responded, Plaintiffs pray that the Motion be denied; that they ultimately prevail upon their Complaint, and for all other just relief in the premises.

Respectfully submitted:

/s/ Ashley Welch Hudson
Ashley Welch Hudson, Ark. Bar # 2007136
Welch and Kitchens, LLC
One Riverfront Drive, Suite 413
North Little Rock, AR 72114
(501) 978-3030 phone
(501) 978-3050 facsimile

## CERTIFICATE OF SERVICE

I, Ashley Welch Hudson, hereby certify that on this 2nd day of June, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Sharon Carden Streett
Attorney at Law
P. O. Box 250418
Little Rock, AR  72225

/s/ Ashley Welch Hudson